EDWARD L. NILAND, ESQ. - State Bar #66990
**NILAND & NILAND**
233 Oak Meadow Drive
Los Gatos, California 95032
Telephone:(408) 395-3100
Fax No. (408) 395-3120

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DISTRICT

| | |
|---|---|
| HECTOR BARRERA, | No. C08-02668 JF |
| Plaintiff, | **PLAINTIFF HECTOR BARRERA'S RESPONSE IN OPPOSITION TO DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION TO DISMISS DEFENDANT SUAZO UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |
| v. | |
| FEDERAL EXPRESS CORPORATION; ANGELA SUAZO, ET AL., | |
| Defendants. | |

Date:   September 12, 2008
Time:  9:00 a.m.
Courtroom 3

Complaint Filed: April 14, 2008

_____/

## FACTS

Although the Plaintiff has yet to the deposed in this case, it is believed discovery will show, and Plaintiff hereby alleges the following:

(1)    Plaintiff was a long term (16 years) and exemplary employee of Federal Express Corporation, working out of the office located at 335 Brokaw Road, Santa Clara, California.

-1-

1   (2)   Plaintiff, as a result of his long service, had a personal relationship with
2         many of his customers.
3   (3)   Plaintiff was under the direct supervision of Defendant Angela Suazo for
4         at least 10 years prior to his termination.
5   (4)   Plaintiff was attacked and humiliated at numerous group meetings by
6         Angela Suazo for speaking out for employee rights and supporting an
7         employee class action against Federal Express Corporation for violation
8         of work time and employee break rules.
9   (5)   Federal Express Corporation had in place a system of progressive
10        discipline that required supervisors to consider an employee's
11        employment history when imposing discipline.
12  (6)   Defendant Angela Suazo, as supervisor, showed a history of having
13        favored female employees in assessing the severity of the discipline to
14        be meted out.
15  (7)   Defendant, Angela Suazo, had personal animosity toward Plaintiff
16        Hector Barrera, and was looking for an excuse to make an example of
17        him.
18  (8)   Plaintiff Barrera's alleged offensives consisted of: (a) leaving a package
19        requiring a signature in response to a customer's written request that it
20        be left without the required signature; (b) leaving a package requiring a
21        signature behind the locked gates of a Saratoga estate, without a
22        signature as requested by his customer; and, (c) overriding the
23        computerized system that tracked packages requiring signatures.
24  (9)   For these alleged offenses, Plaintiff Hector Barrera was accused by
25        Angela Suazo of "falsification" and he was terminated summarily by
26        Angela Suazo.

27

28

-2-

(10)   Angela Suazo had the discretion and duty to impose a lessor discipline, such as verbal or written warning, and did not due to favoritism toward female employees and personal animosity toward Hector Barrera

(11)   There has been a hearing and judicial determination by the California Unemployment Insurance and Appeals Board that Mr. Barrera was not terminated for just cause and was, at most, guilty of lack of good judgment.  (See attached Exhibit A)

## ARGUMENT AND AUTHORITY

What is at issue here is whether Angela Suazo is properly named as an individual defendant in light of the recent case of Jones vs. The Lodge at Torry Pines Partnership (2008)42 Cal.4th 1158 which held that while an individual "person", i.e., non-employer supervisor, can be liable for harassment, he (she) cannot be individually liable for retaliation for filing a DFEH Claim.

Justice J. Moreno quite correctly points out in his well-reasoned dissent, that neither the legislature, nor reason, makes the case for such a distinction.  (See attached Exhibit B for the convenience of the Court)

In the Instant case, Plaintiff Barrera asserts he was the victim of the most virulent of all harassment, an abuse of discretionary authority to impose a much harsher than warranted discipline, i.e., termination after 16 years of exemplary service, motivated by personal animosity and a demonstrated favoritism toward female employees.  He did not file or support a DFEH Claim prior to this harassment.

Plaintiff concedes that his complaint lists retaliation as a motive but, in light of the Supreme Court's recent decision, seeks leave of this Court to amend his complaint to characterize the actions of Angela Suazo as illegal harassment.

In addition, to officially categorize Plaintiff's actions as "falsification" connotes illegal wrongdoing that unjustly characterizes his actions in such a way as

-3-

1    to amount to slander per se, and Plaintiff seeks leave to amend his complaint vs.

2    Angela Suazo and Federal Express Corporation accordingly.

3

4    Date: August 21, 2008                    Respectfully Submitted,

5                                             NILAND & NILAND

6

7                                             ____/S/_____

8                                             EDWARD L. NILAND
                                              Attorney for Plaintiff
9                                             HECTOR BARRERA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                   -4-

28

1                                  **PROOF OF SERVICE**

2   **U. S. DISTRICT COURT OF NORTHERN CALIFORNIA**
    **BARRERA VS. FEDERAL EXPRESS CORPORATION; ANGELA SUAZO**
3   **Case No.:    C08-02668 RS**

4   I am a resident of the State of California, over the age of eighteen years, and not a
    party to the within action.  My business address is 233 Oak Meadow Drive, Los
5   Gatos, California 95032.

6   On August 21, 2008, I served the foregoing document, described as set forth below,
    on the interested parties in this action by placing a true copy thereof enclosed in a
7   parcel at San Jose, California, and addressed as indicated below:

8   **Documents Served:**          **Plaintiff Hector Barrera's Response in Opposition to**
                                    **Defendant Federal Express Corporation's Motion to**
9                                   **Dismiss Defendant Angela Suazo Under Rule 12(b)(6)**

10  **Parties Served:**

11  **Christopher James Yost**          **ATTORNEY FOR DEFENDANT**
    **Federal Express Corporation**    **FEDERAL EXPRESS CORPORATION;**
12  **Litigation -Legal Department**    **ANGELA SUAZO**
    **2601 Main Street, Ste 340**
13  **Irvine, CA  92614**
    **(949) 862-4558**
14  **(949) 862-4605 Fax**

15  **David S. Wilson, III**             **ATTORNEY FOR DEFENDANT**
    **Federal Express Corporation**     **FEDERAL EXPRESS CORPORATION;**
16  **Litigation - Legal Department**    **ANGELA SUAZO**
    **2601 Main Street, Ste 340**
17  **Irvine, CA 92614**
    **(949) 862-4656**
18  **(949) 862-4605 Fax**

19   X        **(By Regular Mail)** I am "readily familiar" with the firm's practice for
                 collection and processing of correspondence for mailing. Under that practice
20               it would be deposited with the United States Postal Service on that same day
                 with postage thereon fully prepaid at San Jose, California, in the ordinary
21               course of business.  I am aware that on motion of the party served, service is
                 presumed invalid if postal cancellation date or postage meter date is more
22               than one day after deposit for mailing affidavit.

23   X        **(Federal)** I declare that I am employed in the office of a member of the Bar of
                 this Court, at whose direction the service was made.

24
         I declare under penalty of perjury under the laws of the State of California that
25  the foregoing is true and correct and that this declaration was executed on August 21,
    2008 at Los Gatos, California.

26                                              /S/
                                         _____
                                         Lynne Crowell
27
                                                -5-
28  _____
    PLTFF HECTOR BARRERA'S OPPOSITION TO DEF. FEDERAL EXPRESS CORP'S  MOTION TO DISMISS
    DEF. ANGELA SUAZO UNDER RULE 12(b)(6)

CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD



**SAN JOSE OFFICE OF APPEALS**          (408) 277-1561
160 W Santa Clara St, Ste 300
SAN JOSE CA 95113

HECTOR E BARRERA
SSN:
Claimant

FEDERAL EXPRESS
c/o UC EXPRESS
Account No: 220-9897
Employer-Appellant

Case No. **1945066**

Issue(s): LATE 1, 1030/32, 1256

Date Appeal Filed: 10/11/2006

EDD:  0250    BYB:  08/06/2006

**Date and Place of Hearing(s):**
(1)  11/07/2006    San Jose

**Parties Appearing:**
Claimant, Employer

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below.  See the attached "Notice to Parties" for further information on how to file an appeal.  If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

Robert M. Lofgren  Administrative Law Judge

Date Mailed:    NOV 1 4 2006

Case No.: 1945066                    San Jose Office of Appeals
CLT/PET: Hector E. Barrera           ALJ: Robert M. Lofgren
Parties Appearing: Claimant, Employer
Parties Appearing by Written Statement: None

## ISSUE STATEMENT

The employer appealed from a determination/ruling that held the claimant was not disqualified for benefits under Unemployment Insurance Code section 1256 and that the employer's account was subject to charges. The issues in this case are:

(1)    Whether the claimant was discharged for misconduct connected with the most recent work; and,

(2)    Whether the employer's reserve account is subject to charges.

An additional issue is whether the appeal was filed within 20 days from the date the department's notice was mailed and, if not, whether there is good cause to extend the 20-day deadline.

## STATEMENT OF FACTS

One of the issues raised by the hearing notice was the timeliness of the employer-appellant's appeal. The claim information submitted by the department establishes that the employer-appellant's appeal was filed on the last date it was due, October 11, 2006.

The claimant was employed for 16 years by the employer-appellant, Federal Express, as a delivery driver until his discharge on August 4, 2006. The claimant was employed there on a full-time basis earning $24.72 per hour.

The claimant was advised by the employer of the correct procedures for delivery of items to customers. Items to be delivered were scanned by the drivers prior to departure from the employer's facility and were required to be scanned upon arrival at the delivery site. The purpose of the scanning was to ensure whether signatures were required prior to delivery of the items to the recipients. It was determined by the employer, based upon an internal audit, that on July 12, 2006 the claimant delivered two items without receiving requisite signatures and that the claimant had breached the employer's rules by failing to scan the documents but instead utilized a manual override in order to allow the products to be delivered.

Both of the items delivered by the claimant were envelopes. Both of the customers were long-term customers of the claimant. The claimant had interaction with the individuals frequently and was familiar with their signatures and the instructions which had been provided. The delivery at the site identified as 19540 Saratoga Avenue in Los Gatos was completed by the claimant based upon prior discussions with the homeowner who advised the claimant that she was frequently indisposed on the estate-like property and that in the event a delivery was to be made which required a signature he was to merely deliver the item without her signature. The claimant was aware that in the event the scanner disclosed that a signature was required that he was required to post a notice on the front door. However, in this instance the claimant was unable to gain access to the gated estate and consequently was concerned about leaving the drop attempt notification affixed to the gate for fear that it would be lost or utilized by someone else in order to obtain delivery. Consequently, the claimant deviated from the employer's rules and left the item safely out of reach of the public behind the locked estate gates.

The next incident occurred at an address identified as 15581 Peach Hill Road in Los Gatos. Upon his arrival there the claimant was confronted with a signed notice from the recipient which was taped to the inside of a glass panel adjacent to the front door which directed the claimant to leave the item under the mat as the individual was anticipating this delivery and was unable to be present because of conflicting work obligations. The claimant recognized the signature and concluded that that was tantamount to a signature of receipt by the recipient.

The employer received no complaints from either the shipper or the recipients of the package.

REASONS FOR DECISION

An individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. (Unemployment Insurance Code, section 1256.)

The employer's reserve account may be relieved of benefit charges if the claimant was discharged for misconduct. (Unemployment Insurance Code, sections 1030 and 1032.)

On the other hand, mere inefficiency, unsatisfactory conduct, poor performance as the result of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good faith errors in judgment or discretion are not misconduct.

Based upon the best available evidence, the claimant was discharged for reasons other than misconduct connected with his most recent work and is not rendered disqualified for benefits under Unemployment Insurance Code section 1256.

Although the claimant was aware of the employer's internal operating procedures for delivery of items without signature the claimant as a result of an error in judgment or discretion delivered items in violation of the employer's policy. The claimant had concerns about leaving an attempted delivery notice at the first location as he was concerned that by placing it on the gate to the estate that it would be potentially lost or secured by another. Accordingly the claimant made reasonable efforts to try to ensure the integrity of the delivery by placing it outside the reach of others inside the gated estate. The claimant would not have done so but for the previous admonitions of the customer which directed him to do so in the event she was not able to be called on the date of his deliveries. The claimant was concerned about serving his customers, the recipients, to the best of the claimant's ability.

The other incident arose as a result of a written direction from the customer whose signature the claimant was familiar with. The claimant accordingly believed that the signed letter on the window was tantamount to a signature and accordingly left the document per the demand of the customer under the mat.

Although the claimant was aware that his practice deviated from the employer's rules the claimant did not appreciate that there would be any potential harm to the shippers as he was concerned with ensuring prompt delivery to his recipients with whom he had frequent contact over the preceding ten years.

Accordingly, it cannot be determined based upon the evidence received that the claimant engaged in volitional misconduct by disregarding the interests of the employer related to the employer's business. Rather, under the evidence presented it is determined that the claimant as a result of a good faith error in judgment or discretion committed an act in violation of the employer's rules, however as such an instance of good faith error in judgment or discretion is not misconduct under the code the department's notice of determination and ruling will accordingly be affirmed.

The legislatively declared public policy of the state requires the extension of unemployment insurance benefits to persons "unemployed through no fault of their own." (Unemployment Insurance Code, section 100.) Accordingly, fault is the basic element to be considered in interpreting and applying section 1256, and the test for misconduct is essentially volitional. (*Rowe v. Hansen* (1974) 41 Cal.App.3d 512.)

Based upon the evidence received, the employer has failed to establish the claimant's discharge was for misconduct connected with his most recent work.

The employer has the burden of proving misconduct. (*Prescod v. California Unemployment Insurance Appeals Board* (1976) 57 Cal.App.3d 29.)

DECISION

The department notice of determination and ruling is affirmed.  The claimant is not disqualified for benefits under Unemployment Insurance Code section 1256. Benefits are payable to the claimant, provided he is otherwise eligible to receive them.

The employer's reserve account is subject to benefit charges under Unemployment Insurance Code sections 1030 and 1032.

LA:lcm /rml





Do Another California Case Law Search
Cases Citing This Case

# Jones v. The Lodge at Torrey Pines Partnership (2008)42 Cal.4th 1158 , -- Cal.Rptr.3d --; -- P.3d --

[No. S151022. Mar. 3, 2008.]

SCOTT JONES, Plaintiff and Appellant, v. THE LODGE AT TORREY PINES PARTNERSHIP et al., Defendants and Respondents.

(Superior Court of San Diego County, No. GIC811515, Richard E. L. Strauss, Judge.)

(The Court of Appeal, Fourth Dist., Div. One, No. D046600, 147 Cal.App.4th 475.)

(Opinion by Chin, J., with George, C.J., Baxter, J., and Corrigan, J., concurring. Dissenting opinion by Werdegar, J. (see p. 1174). Dissenting opinion by Moreno, J., with Kennard, J., and Werdegar, J., concurring (see p. 1175).)

**COUNSEL**

Toothacre & Toothacre, Scott H. Toothacre and Rod M. Toothacre for Plaintiff and Appellant.

Law Offices of Jeffrey K. Winikow and Jeffrey K. Winikow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Barry R. Levy, Nina E. Scholtz; Wilson Petty Kosmo & Turner, Regina A. Petty, Michael S. Kalt, Jessica A. Chasin; and Robert H. Gleason for Defendants and Respondents.

Law Offices of Steven Drapkin and Steven Drapkin for Employers Group, California Employment Law Council and California Chamber of Commerce as Amici Curiae on behalf of Defendants and Respondents.

Liebert Cassidy Whitmore, Melanie M. Poturica and David Urban for League of California Cities as Amicus Curiae on behalf of Defendants and Respondents. **[42 Cal.4th 1160]**

**OPINION**

**CHIN, J.-**

In *Reno v. Baird* (1998) 18 Cal.4th 640 (*Reno*), we held that, although an employer may be held liable for discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), fn. 1 nonemployer individuals are not personally liable for that discrimination. In this case, we must decide whether the FEHA makes individuals personally liable for *retaliation*. We conclude that the same rule applies to actions for retaliation that applies to actions for discrimination: The employer, but not nonemployer individuals, may be held liable.

## I. PROCEDURAL HISTORY

Plaintiff Scott Jones sued his employer, The Lodge at Torrey Pines Partnership (The Lodge), and his supervisor at work,

Jean Weiss, as well as others no longer involved in this litigation, for various causes of action, including sexual orientation harassment in violation of section 12940, subdivision (j)(1), sexual orientation discrimination in violation of subdivision (a), **[42 Cal.4th 1161]** and retaliation in violation of subdivision (h). The trial court granted summary adjudication in defendants' favor regarding some of the causes of action, including the harassment cause of action. It found that plaintiff had failed to present admissible evidence of harassment by Weiss that was severe and pervasive enough to alter the conditions of his employment and create an abusive working environment.

Ultimately, two causes of action went to a jury trial: the claim for sexual orientation discrimination against The Lodge only, and the claim for retaliation against both The Lodge and Weiss. The jury returned a verdict for plaintiff on both causes of action. It awarded compensatory damages of $1,395,000 against The Lodge and $155,000 against Weiss, but found Weiss did not act with malice or oppression.

The trial court originally entered judgment on the verdict, but later it granted both defendants' motions for judgment notwithstanding the verdict and, alternatively, for a new trial. Among other things, it concluded that plaintiff had presented insufficient evidence that he had suffered an adverse employment action as to both causes of action. Concerning defendant Weiss, it also ruled that an individual cannot be liable for retaliation. It entered judgment in favor of both defendants.

Plaintiff appealed, and defendants cross-appealed. The Court of Appeal reversed the order granting the motions for judgment notwithstanding the verdict and for a new trial, and reinstated the original judgment on the verdict. Among other things, the court concluded there was sufficient evidence that plaintiff had suffered an adverse employment action. It also found that an individual can be held liable for retaliation under the FEHA.

We granted defendants' petition for review limited to the question whether an individual may be held personally liable for retaliation under the FEHA.

## II. DISCUSSION

[1] Section 12940, part of the FEHA, begins, "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: . . ." Several subdivisions follow, defining various unlawful employment practices. One unlawful employment practice is for an employer to engage in specified kinds of discrimination. (Subd. (a).) Another, the one involved in this case, is "[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the **[42 Cal.4th 1162]** person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Subd. (h).) This form of unlawful employment practice is often called simply "retaliation." (See, e.g., *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (*Yanowitz*).) Another unlawful employment practice is harassment. (Subd. (j).) fn. 2

Plaintiff has sued his supervisor at work, as well as the employer itself, for retaliation. We must decide whether individuals may be held personally liable for retaliation. In *Reno, supra,* 18 Cal.4th 640, we held that, although the employer may be liable for unlawful discrimination, individuals working for the employer, including supervisors, are not personally liable for that discrimination. The question here is whether language differences between subdivisions (a) (concerning discrimination) and (h) (concerning retaliation) require a different rule as to retaliation. Subdivision (a) makes it an unlawful employment practice for "an employer" to discriminate. Subdivision (h) makes it an unlawful employment practice for "any employer, labor organization, employment agency, or person" to retaliate.

Plaintiff argues that section 12940's plain language -- specifically, the use of the word "person" in subdivision (h) to describe who may not retaliate --compels the conclusion that all persons who engage in prohibited retaliation are personally liable, not just the employer. Accordingly, plaintiff argues, we must follow that plain meaning without engaging in other kinds of statutory interpretation. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) The courts that have considered the same argument, including the Court of Appeal in this case, have so held. (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1236-1237; *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1240-1242; see also *Winarto v. Toshiba America Electronics Components* (9th Cir. 2001) 274 F.3d 1276, 1287-1288, and cases cited.) We disagree.

[2] The statutory language is not plain. Subdivision (j), the subdivision prohibiting harassment, provides, "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . ." (Subd. (j)(3).) This is clear language imposing personal liability on all employees for their own harassing actions. Subdivision (h) is far less clear. Its language does lend itself to **[42 Cal.4th 1163]** plaintiff's interpretation,

but, as we explain, that is not the only reasonable interpretation of the statutory language. "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra,* 34 Cal.4th at p. 737.)

The language difference between subdivisions (a) and (h) of section 12940 is not as great as initially appears. Although subdivision (a) does not itself use the word "person" to describe who engages in the prohibited discrimination, in two respects that subdivision arguably does govern discrimination by a "person." First, section 12926, subdivision (d), defines "[e]mployer" (the word used in § 12940, subd. (a)) as including "any *person* acting as an agent of an employer, directly or indirectly . . . ." (Italics added.) Second, subdivision (i) of section 12940 makes it an unlawful employment practice "[f]or any *person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or attempt to do so." (Italics added.) The plaintiff in *Reno* argued that the use of the word "person" in these provisions meant that persons, as well as the employer itself, could be liable for discrimination. We rejected the argument. We said the person-as-agent language of section 12926, subdivision (d), *could* mean, as the plaintiff urged, that such persons can be held personally liable, but it could also have been " 'intended only to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.' " (*Reno, supra,* 18 Cal.4th at p. 647, quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 66 (*Janken*).) For several reasons, we agreed with the *Janken* court that the latter construction was the correct one. (*Reno, supra,* at pp. 647-655.) We also concluded that the aiding and abetting language of former subdivision (g) (now subd. (i)) of section 12940 did not impose personal liability on nonemployers. (*Reno, supra,* at pp. 655-656.)

The question whether personal liability exists where the statutes prohibit discrimination by "any person acting as an agent of an employer" (§ 12926, subd. (d)) and by "any person" who aids and abets an unlawful employment practice (§ 12940, subd. (i)) -- which we resolved in *Reno, supra,* 18 Cal.4th 640 -- is similar to the question presented here -- whether personal liability exists where the statute prohibits retaliation by "any employer, labor organization, employment agency, or person . . . ." (*Id.,* subd. (h).) We can and must analyze it similarly. In context, the Legislature may have used the word "person" in subdivision (h) for reasons unrelated to a desire to make individuals personally liable for retaliation. Subdivision (h) is a catchall provision aimed at prohibiting retaliation against "any person because the person has opposed any practices forbidden *under this part* or because the [**42 Cal.4th 1164**] person has filed a complaint, testified, or assisted in any proceeding *under this part*." (Italics added.) The subdivision thus incorporates other unlawful employment practices defined in other parts of section 12940, and forbids retaliation against anyone opposing any such unlawful employment practice. Each of the entities to which subdivision (h) applies -- employer, labor organization, employment agency, or person -- is the subject of one or more other subdivisions of section 12940 defining specific unlawful employment practices. It is possible the Legislature merely wanted to use each of these terms in subdivision (h) to conform to the fact that other provisions use those terms, rather than to impose personal liability on individuals in addition to the employer itself. Accordingly, we must engage in statutory interpretation to resolve this ambiguity, as we did in *Reno* itself.

*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation. In *Reno,* we noted that the FEHA prohibits harassment as well as discrimination but that it treated them differently. (*Reno, supra,* 18 Cal.4th at p. 644.) We recognized that at least some individuals may be liable for harassment. fn. 3 But we concluded that the FEHA does not make individuals personally liable for discrimination. We found persuasive *Janken, supra,* 46 Cal.App.4th 55, which had " 'conclude[d] that the Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions -- which might later be considered discriminatory -- as inherently necessary to performance of a supervisor's job.' " (*Reno, supra,* at p. 645, quoting *Janken, supra,* at pp. 62-63.)

"The [*Janken*] court noted that 'harassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. [Citations.] [¶] Discrimination claims, by contrast, arise out of the performance of necessary personnel management duties. [**42 Cal.4th 1165**] While harassment is not a type of conduct necessary to personnel management, making decisions is a type of conduct essential to personnel management. While it is possible to avoid making personnel decisions on a prohibited discriminatory basis, it is not possible either to avoid making personnel decisions or to prevent the claim that those decisions were discriminatory. [¶] . . . An individual supervisory employee cannot . . . refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties.' " (*Reno, supra,* 18 Cal.4th at pp. 645-646, quoting *Janken, supra,* 46 Cal.App.4th at pp. 63-64.)

"The *Janken* court also noted that the FEHA exempts small employers from liability for discrimination. 'Section 12926, subdivision (d) defines "employer" as including "any person regularly employing five or more persons." A person who regularly employs less than five other persons is not an "employer" for purposes of FEHA prohibitions on discrimination, and hence cannot be sued for discrimination. (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121.) For purposes of harassment, however, "employer" is specially defined in section 12940, [former] subdivision (h)(3)(A) to include any person regularly employing *one* or more persons. Section 12940, [former] subdivision (h)(4) and (5) make clear that this special definition of "employer" as someone employing only *one* other person applies only to harassment claims, and that discrimination claims continue to be covered by the "five or more" definition in section 12926, subdivision (d). The Legislature thus made a clear distinction in California in the treatment of harassment claims versus the treatment of discrimination claims: small employers can be sued for harassment, but they cannot be sued for discrimination. [¶] . . . [¶] . . . The Legislature clearly intended to protect employers of less than five from the burdens of litigating discrimination claims. [Citation.] . . . [I]t is "inconceivable" that the Legislature simultaneously intended to subject individual nonemployers to the burdens of litigating such claims. To so construe the statute would be "incongruous" and would "upset the balance" struck by the Legislature.' (*Janken*, *supra*, 46 Cal.App.4th at pp. 71-72, original italics, fns. omitted.)" (*Reno*, *supra*, 18 Cal.4th at pp. 650-651.)

"The *Janken* court stated that 'imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment. The minimal potential for benefit to an alleged victim juxtaposed with the potentially severe adverse effects of imposing personal liability on individual supervisory employees is an additional reason for our conclusion that this is not the result intended by the Legislature. **[42 Cal.4th 1166]**

" 'Many courts have noted the importance of maintaining the conditions in which impartial judgment can be exercised by officials performing duties in the public sector. [Citations.] . . . [¶] No one could reasonably doubt that effective and efficient management of industrial enterprises and other economic organizations is also important to the public welfare. The societal interest in effective private sector personnel management may be less direct, but only marginally (if at all) less compelling . . . . Yet it is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected. [Citation.] [¶] . . . [¶]

" 'Plaintiffs' theory would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision. . . . [It] would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. The employee would thus be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. The insidious pressures of such a conflict present sobering implications for the effective management of our industrial enterprises and other organizations of public concern. We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here.

" 'Moreover, imposing personal liability against individual supervisory employees adds little to an alleged victim's legitimate prospects for monetary recovery. The plaintiff-employee's primary target remains the employer. Adding individual supervisors personally as defendants adds mostly an in terrorem quality to the litigation, threatening individual supervisory employees with the spectre of financial ruin for themselves and their families and correspondingly enhancing a plaintiff's possibility of extracting a settlement on a basis other than the merits. Enhancing the prospects for obtaining a settlement on a basis other than the merits is hardly a worthy legislative objective . . . .' " (*Reno*, *supra*, 18 Cal.4th at pp. 651-653, quoting *Janken*, *supra*, 46 Cal.App.4th at pp. 72-75.)

In *Reno*, we also explained that "[c]orporate decisions are often made collectively by a number of persons. Different individuals might have differing levels of awareness and participation in the decisions. When a collective **[42 Cal.4th 1167]** decision is discriminatory, some participants might have acted innocently, others less so. Assessing individual blame might be difficult, in contrast to simply placing blame on the corporation, on whose behalf the individuals acted. Moreover, to make collective decisions possible, individuals often must rely on information or evaluations that others supply. Imposing individual liability for collective decisions might place the individuals in an adversarial position to each other (as well as to the corporation). Individuals might fear to act in reliance on input from others. Some might fear that a potentially controversial but, so far as they can know, correct and necessary collective decision might be misconstrued and give rise to a discrimination action. Out of caution, they might feel compelled to dissent from that decision, or attempt to disassociate themselves from it, merely to protect their pocketbooks. For these reasons, imposing liability on the corporate whole rather

than each individual who participated in the corporate decision is sensible." (*Reno, supra,* 18 Cal.4th at p. 662.)

We also explained that "[w]e do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (*Reno, supra,* 18 Cal.4th at p. 663.) "For these reasons, we conclude[d] that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (*Ibid.*)

All of these reasons for not imposing individual liability for discrimination -- supervisors can avoid harassment but cannot avoid personnel decisions, it is incongruous to exempt small employers but to hold individual nonemployers liable, sound policy favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision -- apply equally to retaliation. Indeed, some may apply even more forcefully to retaliation claims. If an employee gains a reputation as a complainer, supervisors might be particularly afraid to impose discipline on that employee or make other lawful personnel decisions out of fear the employee might claim the action was retaliation for the complaining. The Legislature has given the same exemption to small employers against claims of retaliation that it gave small employers against claims of discrimination. (See § 12940, subd. (j)(4)(A) ["The definition of 'employer' in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision."].) No reason **[42 Cal.4th 1168]** appears why it would want to make nonemployer individuals personally liable for retaliation but not for discrimination. fn. 4

In *Yanowitz, supra,* 36 Cal.4th 1028, we considered what type of employment actions are sufficiently adverse to the employee to support a cause of action for retaliation. The relevant statutory language regarding discrimination is somewhat different than the language regarding retaliation. (Compare subd. (a) ["to discriminate against the person in compensation or in terms, conditions, or privileges of employment"] with subd. (h) ["to discharge, expel, or otherwise discriminate"].) Because of this language difference, the plaintiff argued that the test of what is an adverse employment action should be broader for retaliation claims than for discrimination claims. We disagreed: "When the provisions of section 12940 are viewed as a whole, . . . we believe it is more reasonable to conclude that the Legislature intended to extend a comparable degree of protection both to employees who are subject to the types of basic forms of discrimination at which the FEHA is directed -- that is, for example, discrimination on the basis of race or sex -- and to employees who are discriminated against in retaliation for opposing such discrimination, rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination. [Citations.] Accordingly, we conclude that the term 'otherwise discriminate' in section 12940(h) should be interpreted to refer to and encompass the *same forms* of adverse employment activity that are actionable under section 12940(a)." (*Yanowitz, supra,* at pp. 1050-1051, italics added.) Thus, in order to establish either a discrimination or a retaliation claim, "an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment . . . ." (*Id.* at p. 1051; see also *id.* at p. 1052.)

If, as we held in *Yanowitz,* the employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination, it is hard to conceive why the Legislature would impose **[42 Cal.4th 1169]** individual liability for actions that are claimed to be retaliatory but not for the *same* actions that are claimed to be discriminatory.

The legislative history or, more precisely, the *absence* of legislative history, behind the inclusion of the word "person" in subdivision (h) of section 12940 also supports our conclusion that the subdivision does not impose personal liability on nonemployer individuals. The word "person" was added to former subdivision (f) (now subd. (h)), in 1987, effective January 1, 1988. (Stats. 1987, ch. 605, § 1, p. 1942.) If plaintiff is correct that the word "person" in subdivision (h) makes individuals liable for retaliation, then the legislation that added that word created individual liability where none had existed previously. The legislative history behind Assembly Bill No. 1167 (1987-1988 Reg. Sess.) (Assembly Bill No. 1167), the bill that added "person" to former subdivision (f) (now subd. (h)), does not support this conclusion.

Assembly Bill No. 1167 made several changes to various parts of the FEHA. As originally introduced, it added the word "person" to section 12940, former subdivision (e) (now subd. (g)). On April 28, 1987, the bill was amended to no longer add "person" to former subdivision (e), but instead to add that word to former subdivision (f) (now subd. (h), the provision at issue here). Thus, if plaintiff is correct, the April 28, 1987, amendment substantially changed the law. If so, this change left no trace in the legislative history. The Legislative Counsel's Digest summarized several of the changes the bill made as originally introduced, but it said nothing about any change to section 12940. Instead, it said only, "The bill would, in

addition, make various conforming changes to the act." (Legis. Counsel's Dig., Assem. Bill No. 1167, as introduced Mar. 3, 1987, p. 1.) Later, after the April 28, 1987, amendment, which made several changes in addition to adding the word "person" to former subdivision (f), the Legislative Counsel's Digest described several of the amendments, but again made no mention whatever of section 12940. Instead, it said only, "The bill would, in addition, make various *technical and conforming* changes to the act." (Legis. Counsel's Dig., Assem. Bill No. 1167, 4 Stats. 1987, Summary Dig., p. 179, italics added.) Thus, the Legislative Counsel *never* specifically mentioned the proposed change to section 12940, but merely lumped it into the catchall term, "technical and conforming changes."

"The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature." (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 428, fn. 5.) The Legislative Counsel's summaries "are prepared to assist the Legislature in its consideration of pending legislation." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17.) **[42 Cal.4th 1170]** Although the Legislative Counsel's summaries are not binding (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1233, fn. 9), they are entitled to great weight. (*California Assn. of Psychology Providers v. Rank, supra*, at p. 17.) "It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest." (*People v. Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434.) Thus, it is reasonable to presume that, when the Legislature added the word "person" to the retaliation subdivision it intended to make only a technical and conforming change. If adding the word "person" merely conformed to the use of the word in describing some of the unlawful employment practices the retaliation provision references, the change could legitimately be described as technical and conforming. A change that created individual liability for retaliation where none had existed previously would be quite substantive, not technical.

Other legislative history bolsters the conclusion that Assembly Bill No. 1167 only made a technical change in the law. For example, the Assembly third reading analysis of Assembly Bill No. 1167, as amended on April 28, 1987, described some of the bill's provisions but did not mention the change to section 12940. Instead, it said only that the bill "[m]akes other technical and conforming changes." (Assem., 3d reading analysis of Assem. Bill No. 1167, as amended Apr. 28, 1987, p. 1.) Other committee reports say essentially the same thing. (E.g., Assem. Com. on Housing and Community Development, Rep. on Assem. Bill No. 1167 as amended Apr. 28, 1987 [the bill "[m]akes other technical and conforming changes to the [FEHA]"]; Sen. Housing and Urban Affairs Com., Rep. on Assem. Bill No. 1167, as amended Apr. 28, 1987 [same].)

All indications are that Assembly Bill No. 1167 had no significant opposition. A bill analysis by the Department of Fair Employment and Housing (DFEH), signed by the "Department Director," described the bill, as amended on April 28, 1987, as "a technical clean-up bill to clarify various sections of the [FEHA] and make standards within the [FEHA] more consistent between subsections." (DFEH, Analysis of Assem. Bill No. 1167, as amended Apr. 28, 1987, p. 1.) It described several of the changes the bill would make, but again it does not mention at all the amendment to section 12940. It recommended supporting the bill, noting that the DFEH and the Fair Employment and Housing Commission (FEHC) "worked together to develop this technical clean-up legislation with the effort to make it noncontroversial." (*Id.*, at p. 2.) Similarly, an enrolled bill report that the DFEH prepared, signed by the same Department Director who signed the DFEH's bill analysis, described Assembly Bill No. 1167 as technical cleanup legislation that was designed to be noncontroversial. It recommended the Governor sign the bill and noted **[42 Cal.4th 1171]** that it had no opposition. (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1167, Sept. 3, 1987.) The legislation passed by a vote of 32 to 0 in the Senate and 64 to 9 in the Assembly. (*Ibid.*) It is hard to imagine that a bill that created individual liability for retaliation where none had existed could be considered so noncontroversial.

The recent decision of *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572 considered an argument that certain legislation significantly changed the law even though, as here, the supposed change left no trace in the legislative history. The Court of Appeal's summary, adapted to reflect the precise legal issue of this case, is apt. "It is difficult to imagine that legislation that would have [created individual liability for retaliation where none had existed] could properly be characterized as 'noncontroversial [or technical].' And we think it highly unlikely that the Legislature would make such a significant change in the [potential liability of individuals] without so much as a passing reference to what it was doing. The Legislature 'does not, one might say, hide elephants in mouseholes.' (*Whitman v. American Trucking Assns., Inc.* (2001) 531 U.S. 457, 468.)" (*Id.* at p. 589; see also *In re Christian S.* (1994) 7 Cal.4th 768, 782 ["We are not persuaded the Legislature would have silently, or at best obscurely, decided so important and controversial a public policy matter and created a significant departure from the existing law."].)

Plaintiff relies on some different legislative history to support his position. He cites an enrolled bill report that the DFEH prepared for the bill that made coworkers liable for harassment. That report said that "[e]xisting law provides that when a person retaliates against another person for opposing practices forbidden by the FEHA . . . a complaint may be filed against any employer, labor organization, employment agency, or person." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.), Sept. 11, 2000, p. 3, citing former subd. (f) (now subd. (h)).) Assuming the statement that a

complaint may be filed against a person was intended to mean that a nonemployer individual could be held personally liable for retaliation, the statement, in a report prepared *after* the 2000 Legislature had passed legislation imposing liability on individuals for *harassment*, does not support the conclusion that the 1987 Legislature intended to impose individual liability for *retaliation* -- especially given the DFEH's own contemporaneous assessment of Assembly Bill No. 1167 (the bill that supposedly created individual liability for retaliation) as merely making noncontroversial technical changes to the FEHA. " 'The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law . . . .' " (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 379.) Moreover, that same report also said that "existing law provides that a complaint may be file[d] against a person who aids, abets, incites, compels, **[42 Cal.4th 1172]** or coerces acts forbidden by the FEHA, or attempts to do so." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.) Sept. 11, 2000, p. 3, citing former subd. (g) (now subd. (i)).) At the time the report was written, this court had already rejected the argument that former subdivision (g) imposed personal liability on individuals. (*Reno, supra*, 18 Cal.4th at pp. 655-656.) Accordingly, this bit of legislative history is not persuasive.

Plaintiff also relies on a five-page document that, according to his judicial notice request, was included in material found in "the legislative bill file of the Assembly Committee on Housing and Community Development on Assembly Bill 1167." It is entitled, "Proposed Changes to the Fair Employment and Housing Act for 1986." It is undated and unsigned, and does not state who authored it. It does not appear to be a committee report. Under the title is stated, "The following is a summary of proposed changes to the Fair Employment and Housing Act, which both the Department of Fair Employment and Housing and the Fair Employment and Housing Commission staff have developed." Plaintiff assumes this statement means that staff of the DFEH or the FEHC, or both, prepared the summary, but it could just as well mean only that the staff developed the proposed changes. Accordingly, it is not clear who wrote the document and for what purpose.

"[W]ithout knowing who prepared the documents and for what purpose" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 10, fn. 3), we doubt very much the document helps ascertain legislative intent. fn. 5 It is not clear which legislators, if any, read it. Plaintiff argues that there is "no evidence that [the document] was *not* considered by the Legislature . . . ." But, even if authored by administrative staff, we have no basis on which to conclude the document reflects the intent of the legislators who enacted the legislation.

Moreover, even if we consider the document for whatever value it may have, it does not help plaintiff's position. As relevant, it states that the rationale for adding the word "person" to former subdivision (f) (now subd. (h)), "is to *conform with other sections of the Act which refer to unlawful conduct by a 'person.'* More importantly, the change will extend coverage to anyone who retaliates against an individual because that person filed a charge with DFEH. This will provide more protection to people exercising their lawful right to **[42 Cal.4th 1173]** file with DFEH." (Italics added.) The italicized language supports the view that the Legislature added the word "person" merely to conform to the fact that some other parts of the statute also use the word "person."

The rest of the quoted language, saying that the change will "extend coverage" and "provide more protection," is itself ambiguous. It does not say *how* the bill would extend coverage and provide more protection. If it said it would do so by making nonemployer individuals personally liable for retaliation, it would be clear; but it does not say that. Even if we assume that some legislators read this summary, it provides no basis to assume that the Legislature intended to create individual liability for retaliation that had not previously existed. In short, an anonymous document that may or may not have been read by many legislators, that may or may not have reflected any legislator's intent, and that is ambiguous as relevant, does not aid us in ascertaining legislative intent. fn. 6

Plaintiff also argues that the FEHC has interpreted the FEHA as imposing personal liability for retaliation on individuals. He cites a single precedential case. (*Dept. Fair Empl. & Hous. v. J & J King of Beepers* (1999) No. 99-02, FEHC Precedential Decs. 1998-1999, CEB 1, p. 1.) That opinion held that a supervisor was personally liable for harassment. (*Id.* at p. 22-23.) It also stated, "It is further determined that respondents [the employer and the supervisor] are each liable for [the supervisor's] retaliatory termination of complainant, in violation of Government Code section 12940, subdivisions (a), [former subd.] (f), and [former subd.] (h)." (*Id.* at p. 23.) The opinion does not state the basis for this conclusion. Although an administrative agency's contemporaneous interpretation of a statute under which it operates is ordinarily entitled to great weight, we rejected similar reliance on FEHC decisions in both *Reno, supra*, 18 Cal.4th at pages 660-661, and *Carrisales v. Department of Corrections, supra*, 21 Cal.4th at pages 1138-1139. The opinion plaintiff cites contained no legal analysis. Moreover, rather than being contemporaneous, it was decided many years after Assembly Bill No. 1167 added the word "person" to former subdivision (f). We find more convincing the DFEH's contemporaneous assessment of that bill as making merely noncontroversial, technical changes in the law.

[3] For these reasons, we conclude that the employer is liable for retaliation under section 12940, subdivision (h), but

nonemployer individuals are not personally liable for their role in that retaliation. We disapprove **[42 Cal.4th 1174]** *Taylor v. City of Los Angeles Dept. of Water & Power*, *supra*, 144 Cal.App.4th 1216, and *Walrath v. Sprinkel*, *supra*, 99 Cal.App.4th 1237, to the extent they are inconsistent with this conclusion.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

George, C.J., Baxter, J., and Corrigan, J., concurred.

**WERDEGAR, J., Dissenting:**

I fully agree with Justice Moreno's dissenting opinion, which I have signed. I write separately to emphasize both its conclusion and my disagreement with the majority.

By enacting the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) fn. 1 in general, and section 12940 in particular, the elected branch of our state government has attempted to respond to one of our society's social ills: discrimination, harassment and retaliation in the workplace on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation." (§ 12940, subd. (a).) Our role as a court is to construe the statutes thus enacted, giving the statutory language its plain and commonsense meaning so as to effectuate and implement the intent of the Legislature.

We have strayed far from this duty today. In analyzing the FEHA, the majority finely parses the statutory language and engages in intricate deductions of legislative intent. In so doing, the majority has lost sight of both our proper role and the basic meaning of the FEHA.

Section 12940, subdivision (h) provides that it shall be an unlawful employment practice "[f]or *any . . . person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]." (Italics added.) The language seems clear enough, as the jury found below. The Court of Appeal agreed, as has every court before today to have considered the question. If, as here, a person (such as defendant Weiss) retaliates against another (such as plaintiff Jones) because he has filed a complaint about harassment in the workplace, the person who engages in **[42 Cal.4th 1175]** retaliation commits an unlawful employment practice and is subject to the legal remedies set forth in the FEHA. In this simple way, our Legislature has chosen to make costly the discrimination against and harassment of employees on the basis of race and gender and the other enumerated statutory grounds, evidently concluding that the high cost visited on such unlawful behavior will dissuade people from engaging in it and employers from tolerating it.

The majority undertakes a series of analytical contortions to reach its conclusion that the phrase "any . . . person" in section 12940, subdivision (h) does not render liable a supervisor who retaliates against an employee if the employee exercises his or her right to complain of unlawful workplace harassment. Not only do I agree with Justice Moreno's refutation of the majority's tortured reasoning, I also find the majority undermines the entire purpose of the FEHA. Whether personal liability in these circumstances is more or less efficacious in reducing or eliminating workplace discrimination is not for this court to say. To conclude that the FEHA plainly authorizes such personal liability is enough.

To the extent the majority holds otherwise, it is incorrect. To the extent it relies on its view of policy (see, e.g., maj. opn., *ante*, at pp. 1167-1168), the majority departs from our role as a court. Accordingly, I join my dissenting colleagues in commending the Legislature's attention to this area of the law.

**MORENO, J., Dissenting:**

Plaintiff Scott Jones alleged that his supervisor, defendant Jean Weiss, subjected him to sexual orientation harassment and also sexually harassed female employees. Plaintiff further alleged that Weiss retaliated against him when he complained about the harassment to Weiss, to Weiss's supervisor, and, ultimately, to the Department of Fair Employment and Housing (DFEH). It is well settled that Weiss can be held individually liable for harassment under Government Code section 12940, subdivision (j)(3), part of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). fn. 1 This case asks us to decide whether, under section 12940, subdivision (h), which forbids retaliation by "any employer, labor organization, employment agency, *or person*" (italics added), Weiss may be held individually liable for his retaliation as well.

Case 3:03-cv-02668-JF  Document 173-3  Filed 08/27/2008  Page 9 of 19

I conclude, as has every other state and federal published opinion to have considered the issue, that the language of section 12940, subdivision (h) unambiguously imposes individual liability on any "person" who retaliates. I presume that the Legislature meant what it said (*People v. Snook* (1997) **[42 Cal.4th 1176]** 16 Cal.4th 1210, 1215) when it added the word "person" to the FEHA's retaliation provision (Stats. 1987, ch. 605, § 1, p. 1942). Just as subdivision (h) unquestionably imposes liability on an employer, labor organization, and employment agency that retaliates, subdivision (h) similarly imposes liability on a "person" who retaliates. Such an interpretation is consistent with established canons of statutory construction -- when a statute's language is clear, our inquiry ends. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.) While the majority may harbor doubts about the wisdom of imposing personal liability on individuals who retaliate (maj. opn., *ante*, at pp. 1164-1168), such policy concerns are properly directed at, and resolved by, the Legislature, not this court.

In rejecting the most commonsense reading of the statute, the majority ultimately concludes that the word "person" in section 12940, subdivision (h), "incorporates" or refers back to other provisions of the statute that are aimed at actions a "person" takes. (Maj. opn., *ante*, at pp. 1163-1164; see § 12940, subds. (c) & (j).) However, as explained below, the only reasonable conclusion that follows is that a supervisor who retaliates against an employee who opposes *that same supervisor's* harassment, as occurred in this case, may be held personally liable under subdivision (h). Because the Legislature has undisputedly provided for individual liability for harassment (§ 12940, subd. (j)(3)), it logically follows that, *at a minimum*, there must also be individual liability for any connected retaliation by the harasser. To hold otherwise would be incongruous indeed. The Legislature could not have intended to expose a supervisor to individual liability for harassing an employee on the one hand, while, on the other hand, shielding that supervisor from liability for retaliating against the employee for opposing that very same harassment. Yet that is precisely the effect of the majority's holding.

In my view, neither the statutory language, nor the legislative history, nor logic can bear the weight of the majority's reasoning. Its holding *incentivizes* supervisors who harass (and thus face the risk of personal liability see § 12940, subd. (j)(3)) to also retaliate against employees who oppose the harassment in an effort to dissuade their victims from reporting the conduct -- under the majority's view, the supervisor risks no additional liability for retaliating and might avoid liability for harassment as well, if he or she successfully "discourages" the employee from pursuing a claim. I cannot conclude the Legislature intended such a perverse and irrational result. I therefore dissent and urge the Legislature to clarify the circumstances under which individuals may be held personally liable for retaliation. **[42 Cal.4th 1177]**

## I. BACKGROUND

The majority omits any mention of the events leading up to the filing of this action. (Maj. opn., *ante*, at pp. 1160-1161.) Because I believe that the facts of this case provide an important context for understanding the legal issues and policy considerations, I begin by setting forth the relevant facts and procedural history. fn. 2

*A. Facts*

Defendant The Lodge at Torrey Pines Partnership (The Lodge) was formed in 1995 to develop, own, and operate The Lodge at Torrey Pines (LTP), a hotel and restaurant adjacent to the Torrey Pines Golf Course in La Jolla, California. fn. 3 The Lodge operated a restaurant at the LTP called The Grill. In 1995, plaintiff began working in a supervisory position at The Grill. In 1997 he was promoted to manager of the restaurant and then, in 2000, he was again promoted to the position of outlet manager, making him responsible for the restaurant, bar, catering and banquet events, and the beverage cart service to golfers on the golf course. That same year, The Lodge began major reconstruction of the LTP with the goal of creating a five-diamond hotel. The Grill remained open during the reconstruction even though the hotel was being demolished around it. In October 2000, The Lodge hired Weiss as the LTP's food and beverage director. At that time, plaintiff was in charge of The Grill and Ken Mullen was the chef in charge of the kitchen.

Plaintiff testified at trial that Weiss and kitchen manager Jerry Steen developed "a special bond of joke telling" that involved daily jokes and sexual comments about female employees and plaintiff. Weiss used the words "fucking," "tits," "bitch," "cocksucker," and "faggot" in jokes that plaintiff found highly offensive and degrading. In connection with a banquet function, Weiss said people like plaintiff are better at decorating and plaintiff "should be good at this kind of stuff." When plaintiff was not present, Steen and Weiss said plaintiff had "to go home to fuck [his] bitch" or "[his] bitch needs [him] at home." Weiss and Steen aimed graphic "gay-bashing jokes" at plaintiff, and they kept written copies of the jokes in the bar next to The Grill.

Several female employees who worked in the LTP's cart department complained to plaintiff that they felt uncomfortable around Weiss and Steen, particularly Weiss. The employees told plaintiff that Steen used offensive language, including

calling them "bitch," and that Weiss leered at them. In early 2001, plaintiff complained to Weiss that Steen was aggressive and **[42 Cal.4th 1178]** unprofessional in the workplace toward women. In February or March, Weiss threatened to fire plaintiff if he "aired any dirty laundry" -- i.e., spoke to the human resources department about anything that happened at the LTP's food and beverage department. In May 2001, plaintiff sent Weiss an interoffice memorandum, stating: "Please refrain from your unprofessional remarks." Plaintiff testified that his reference to "unprofessional remarks" included gay-bashing jokes and jokes about women. Weiss responded by bringing plaintiff into his (plaintiff's) office and ordering everyone else out, locking the door, sitting plaintiff down in a corner, and delivering a tirade, after which he (Weiss) crumpled up plaintiff's interoffice memorandum and threw it at him. Plaintiff felt physically intimidated by Weiss.

On June 4, 2001, Steen was promoted to the newly created position of food and beverage operations manager for The Grill and the LTP's golf course operations. On June 6, a female employee, Jayme Miller, told plaintiff she wanted to lodge a written complaint about the gay-bashing jokes she had heard Weiss and Steen tell about plaintiff and his partner. The next day, plaintiff met with Jim Fulks, the human resources director for Evans Hotels. During the meeting, which lasted over two hours, plaintiff complained about sexual orientation discrimination and harassment at the LTP and about the sexual harassment of his female coworkers. He also told Fulks about the vulgar language Weiss and Steen used in the workplace and that Miller would be filing a written complaint. Plaintiff became very emotionally upset and expressed the need to see a therapist for counseling. Fulks told plaintiff he (plaintiff) would have to ask Weiss's permission to seek counseling and suggested he quit his job because "things like this get worse." Fulks thought plaintiff was too upset to work, so he directed him to call Weiss and tell him he would not be able to come to work that day. When plaintiff returned to work the next day, however, he received an "Employee Warning Notice" for absenteeism from Weiss, stating: "You did not follow Evans Hotels' policy by failing to notify your manager at least two hours before your starting time. You called at 11:31 a.m. You were scheduled for 12:00 noon." Plaintiff had never had a written employee warning notice before. He immediately called Fulks and asked why he had been written up. Fulks said, "That's the policy."

On June 16, 2001, Miller had a friend deliver a letter to Fulks. In that letter, Miller complained about Weiss's and Steen's treatment of plaintiff and expressed her view that they were blackballing him. Fulks met with Miller shortly after receiving the letter, and Miller elaborated on the gay-bashing comments that Weiss and Steen made against plaintiff.

In a memorandum dated June 11, Weiss summarized various concerns about plaintiff's performance as a manager. Weiss had never "written anybody up," so Fulks gave him the format he should use to document his **[42 Cal.4th 1179]** dissatisfaction with plaintiff's work performance. Weiss's memorandum discussed plaintiff's unsatisfactory performance in various areas and directed plaintiff to correct the issues within 30 days. The memorandum warned that "recurring performance problems may require further disciplinary action, which could lead to suspension and/or termination of employment at Evans Hotels."

Plaintiff received a memorandum dated June 15, 2001, requesting him to meet with Weiss and Fulks on June 18 at the human resources department. Plaintiff was happy when he received the memorandum because he thought something was finally going to be done about the issues he had raised in his meeting with Fulks. However, when he arrived at the meeting, Fulks gave him Weiss's June 11 memorandum and made it clear they would only discuss the work performance issues raised in that document. Plaintiff was shocked to receive the memorandum, which he viewed as a "30-day notice for poor work performance" -- i.e., a 30-day notice to comply with the directives of the memorandum or be terminated. Fulks told him they would meet after 30 days to discuss his progress. Although plaintiff testified he "did not believe a single word on this memorandum," he did not prepare a written response.

After plaintiff's June 18 meeting with Weiss and Fulks, Weiss stopped talking to him and excluded him from the LTP weekly management meetings, which he formerly had attended. On June 19, Weiss and Steen continued to use offensive language in the workplace and plaintiff overheard Steen threaten to "punch the faggot in the mouth." Plaintiff complained to Fulks about Steen's threat. Fulks said he would talk to Weiss, but plaintiff never heard back from Fulks on the matter.

On July 19, 2001, plaintiff's doctor put him on disability leave until August 13 for "on-the-job harassment." Plaintiff's doctor later extended the leave to September 5. While plaintiff was on leave, Fulks instructed Dan Ferbal, the corporate director of training for Evans Hotels, to take plaintiff out to lunch to see how he was doing and to discuss his return to work. At Fulks's request, Ferbal proposed plaintiff transfer from his management position at the LTP to a supervisory position at another Evans Hotels property. Plaintiff told Ferbal he wanted to return to his job at the LTP and would not take a demotion.

When plaintiff's disability leave expired, Fulks placed him on paid administrative leave because the issue of where he would return to work was still unresolved. Fulks and Bill Evans, who was managing director of Evans Hotels and a general partner of The Lodge, tried to persuade plaintiff to take a position at the other property, but plaintiff adamantly refused to transfer

from his position at the LTP. Plaintiff later met with Fulks and Dan Fullen, the general manager of the LTP. They told him he could return to the LTP but **[42 Cal.4th 1180]** he would have to take care of the performance issues raised by Weiss. Plaintiff testified they told him he was still on his 30-day probation and that the way he suddenly went on disability leave had "burn[ed] a bridge" with the LTP's management. Plaintiff also testified that when he mentioned he had met with somebody in the DFEH, Fulks accused him of "blackmailing" the hotel and offered him $10,000 to drop his DFEH case. On September 25 the DFEH sent Fulks a "Notice of Filing of Discrimination Complaint" and a copy of the complaint plaintiff had filed with the DFEH the day before.

On September 28, plaintiff returned to work at the LTP as manager of The Grill. He continued to be excluded from meetings and Mullen advised him to watch his back because Weiss was "looking out to get dirt on [him]." Mullen testified that during a meeting sometime in the fall of 2001, Weiss said: "We've got to get Scott Jones out of here."

In October, plaintiff filed an amended DFEH complaint. In November, he was excluded from a "coordination meeting" of Evans Hotels management employees regarding the upcoming Buick Invitational golf tournament. He had previously been included in Buick Invitational coordination meetings and his assistant was included in the November 2001 meeting. When plaintiff asked Fulks why he was excluded from the meeting and his assistant was allowed to attend, Fulks replied: "Because that's what you wanted. That's who [Weiss] is working with."

Between December 28, 2001, and January 17, 2002, Weiss issued four different employee warning notices to plaintiff. The first notice was for missing work without notifying Weiss and the other three were for alleged violations of "standard operating procedures." Plaintiff responded in writing to the first three notices, complaining that they had been issued for things that had never previously been a problem. Plaintiff did not respond to the last notice because he was "fed up."

On January 22, 2002, plaintiff submitted a letter of resignation, giving two weeks' notice. On January 24, Fulks hand-delivered plaintiff's final paycheck and a letter responding to plaintiff's resignation letter, telling plaintiff it was "time to go home" because his service was no longer needed. In his letter, Fulks referred to plaintiff's "performance issues" and concluded with the statement: "I feel compelled to reiterate that your reasons and circumstances for leaving the Company should not be shared with other staff members of Evans Hotels in the interest of maintaining your confidentiality." On January 25, Ferbal documented a conversation he had had that day with plaintiff. Plaintiff told Ferbal he was glad to be out of the LTP and that he had "had it" with the extreme harassment he had endured from Weiss. Ferbal reported: "[Plaintiff] was extremely upset with the warnings he had just received over **[42 Cal.4th 1181]** the past few weeks. Stupid stuff." Plaintiff told Ferbal that he had thoroughly enjoyed working for Evans Hotels, but he was sick of the abuse and wanted to feel better, and that he was worried about his health, which was his first priority.

B. *Procedural History*

The procedural history of this case is somewhat complicated. As relevant here, plaintiff sued The Lodge asserting causes of action for (1) wrongful constructive discharge in violation of public policy, (2) sexual orientation harassment, (3) sexual orientation discrimination, (4) retaliation, (5) breach of implied contract for continued employment, and (6) intentional infliction of emotional distress. Plaintiff also sued Steen and Weiss individually under the second, fourth, and sixth causes of action.

The trial court ultimately granted The Lodge's motion for summary adjudication as to plaintiff's first, second, fifth, and sixth causes of action, leaving only the sexual orientation discrimination and retaliation claims. The trial court granted Steen's motion for summary adjudication as to all of the claims against him and entered judgment in his favor. The trial court granted Weiss's motion for summary adjudication as to the second and sixth cause of action against him, leaving only the retaliation claim.

The remaining causes of action were tried to a jury, which returned a verdict in plaintiff's favor on all of the claims against defendants. The jury awarded compensatory damages of $1,395,000 against The Lodge and $155,000 against Weiss. The court entered judgment on the verdict.

The Lodge and Weiss filed separate motions for judgment notwithstanding the verdict and, alternatively, a new trial. On April 22, 2005, the court granted the motions for judgment notwithstanding the verdict, concluding plaintiff had to establish an adverse employment action had been taken against him to succeed on both his discrimination and retaliation causes of action and there was insufficient evidence of an adverse employment action. With respect to Weiss, the court ruled an individual cannot be liable for retaliation. The court also granted the alternative motions for new trial. On May 9, 2005, the court entered a judgment in favor of The Lodge and Weiss.

After plaintiff appealed, the Court of Appeal unanimously reversed. With respect to the question of whether Weiss could be held individually liable for retaliation, the court primarily relied on the plain language of the retaliation provision (§ 12940, subd. (h)). We granted review to determine whether an individual may be held personally liable for retaliation. **[42 Cal.4th 1182]**

## II. DISCUSSION

In determining whether the Legislature intended to impose individual liability for retaliation, it is well settled that we must begin with the statutory language because it "generally provide[s] the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) If the words are unambiguous, "we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook*, *supra*, 16 Cal.4th at p. 1215.) Only when the statutory language is susceptible of more than one *reasonable* interpretation may the court turn to extrinsic aids, such as legislative history or public policy, to assist in interpreting the statute. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.)

The pertinent language of section 12940, subdivision (h) makes it an unlawful employment practice for "any employer, labor organization, employment agency, *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Italics added.) On two previous occasions, this court has considered whether other subdivisions of section 12940, which use somewhat different language, impose individual liability. (See *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132 (*Carrisales*) [harassment]; *Reno v. Baird* (1998) 18 Cal.4th 540 (*Reno*) [discrimination].) In both cases, this court concluded that the subdivisions did not do so. However, as our holdings were predicated on statutory language not present in the retaliation provision at issue here, neither case is particularly helpful.

### A. *Our Prior Section 12940 Decisions Are Inapplicable to This Case*

In *Reno*, *supra*, 18 Cal.4th 640, we considered whether section 12940, subdivision (a), which makes it unlawful for an "employer" to discriminate against employees, allows supervisors to be held personally liable for acts of discrimination. The plaintiff in *Reno* sued her employer and her supervisor, alleging that both had discriminated against her based on her medical condition in violation of the FEHA. (*Reno*, *supra*, 18 Cal.4th at p. 643.) Although subdivision (a) prohibits only an "employer" from engaging in improper discrimination, the plaintiff argued that her supervisor could nonetheless be held individually liable, relying on section 12926, subdivision (d), which defines "employer" as including "any person acting as an agent of an employer, directly or indirectly . . . ." (§ 12926, subd. (d); *Reno*, *supra*, 18 Cal.4th at pp. 644-645.) The plaintiff accordingly reasoned that the Legislature intended that supervisors be held individually liable because supervisors, **[42 Cal.4th 1183]** acting as employers' agents, fit within the definition of "employer." (*Reno*, *supra*, 18 Cal.4th at p. 647.)

We found section 12926, subdivision (d) to be ambiguous and amenable to two possible interpretations: either that (1) the Legislature intended to make every supervisor individually liable, as urged by the plaintiff, or (2) the Legislature merely intended to ensure that respondeat superior principles would apply by making employers liable for the actions of their supervisors, as urged by the defendant supervisor. (*Reno*, *supra*, 18 Cal.4th at p. 647.) In adopting the latter construction, we cited with approval the holding and reasoning of *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 (*Janken*). (*Reno*, *supra*, 18 Cal.4th at p. 663.) We primarily relied on the FEHA's differential treatment of harassment and discrimination as evidenced by the differing language the Legislature used in the respective subdivisions. (*Reno*, *supra*, 18 Cal.4th at p. 645.) We noted that "[a]lthough the FEHA prohibits harassment as well as discrimination, it treats them differently. It prohibits 'an employer . . . or *any other person*' from harassing an employee. (§ 12940, subd. (h)(1) [now subd. (j)(1)], italics added.) . . . The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination. (§ 12940, subd. (a).)" fn. 4 (*Reno*, *supra*, 18 Cal.4th at p. 644.) We concluded that the Legislature, aware that different types of conduct gave rise to the different claims, "properly tailored the FEHA in order to address these distinct claims." (*Reno*, *supra*, 18 Cal.4th at p. 657.)

The majority in this case argues that our reasoning in *Reno* applies with equal force to retaliation claims under section 12940, subdivision (h). (Maj. opn., *ante*, at p. 1164.) But *Reno* is distinguishable for several reasons. First, the language of the retaliation provision at issue in this case (subd. (h)) is entirely unlike the language of the discrimination provision (subd. (a)) we considered in *Reno*. As discussed above, the FEHA's discrimination provision (subd. (a)) makes it an unlawful employment practice only when an "employer" discriminates. (*Reno*, *supra*, 18 Cal.4th at p. 644.) The FEHA's *retaliation* provision, on the other hand, makes it an unlawful employment practice for "any employer, labor organization, employment agency, *or person*" to retaliate. (Subd. (h), italics added.) I find unpersuasive the majority's assertion that the "language difference between subdivisions (a) and (h) of section 12940 is not as great as initially appears" (maj. opn., *ante*, at p. 1163). The Legislature's decision to identify additional bad actors whose **[42 Cal.4th 1184]** retaliatory conduct triggers liability is

certainly significant, yet the majority accords the Legislature's choice of words no weight.

Additionally, the majority's claim that any language difference between the two subdivisions is minimal is belied by *Reno*. In an opinion written by the author of the majority in this case, we *emphasized* differences between the language of the FEHA's discrimination and harassment provisions, the latter of which uses language nearly identical to the retaliation provision at issue here. (*Reno, supra,* 18 Cal.4th at p. 644.) Specifically, we noted that the FEHA "prohibits 'an employer . . . or *any other person*' from harassing an employee (§ 12940, subd. [(j)(1)])" (our italics) but "prohibits only 'an employer' from engaging in improper discrimination. (§ 12940, subd. (a).)" (*Reno, supra,* 18 Cal.4th at p. 644.) I find it difficult to comprehend how linguistic differences we found significant in *Reno* could suddenly be of no interpretive import here. fn. 5

*Reno* is distinguishable for a second reason. In rejecting the plaintiff's argument that section 12940, subdivision (a) imposes individual liability because the word "employer" includes "any person acting as an agent of an employer" (§ 12926, subd. (d)), we concluded that the Legislature so defined "employer" to incorporate respondeat superior principles. (*Reno, supra,* 18 Cal.4th at p. 663.) Defendants argue that the Legislature may have had a similar purpose in adding the word "person" to the retaliation provision. Defendants' assertion cannot be correct. The FEHA's retaliation provision applies to "any *employer,* labor organization, employment agency, or person . . . ." (Italics added.) Accordingly, it is the word "employer" in the provision that incorporates respondeat superior principles (see *Reno, supra,* 18 Cal.4th at p. 663) and ensures that an employer would be liable for its supervisors' retaliatory conduct. It would be odd indeed for the Legislature to have added the word "person" to the retaliation provision to serve a function identical to that of the word "employer." Such an interpretation is disfavored because it renders the word "person" surplusage. (*People v. Cole* (2006) 38 Cal.4th 964, 980-981.) The presumption against surplusage applies with particular force when, **[42 Cal.4th 1185]** as here, the language in question was added by amendment (Stats. 1987, ch. 605, § 1, p. 1942); such an interpretation would render the amendment unnecessary.

In relying on *Reno*, the majority also spends a great deal of time reiterating policy concerns that we first discussed in that case regarding the imposition of individual liability on supervisors. (Maj. opn., *ante*, at pp. 1164-1168.) Evaluating and resolving these concerns, however, is the province of the Legislature. Moreover, there is no reason to suppose that the Legislature was motivated by these concerns. Indeed, it may have reasonably believed that imposing individual liability would more effectively deter retaliation (ensuring employees would feel free to report unlawful employment actions without fear of retribution) and punish those who retaliate. Whatever the Legislature's motivation, if a statute's language clearly imposes individual liability, it is not for this court to second-guess the wisdom of the Legislature's policy choices. Accordingly, *Reno* does not support the claim that the word "person" in subdivision (h) does not impose individual liability.

In *Carrisales, supra,* 21 Cal.4th 1132, we considered whether an employee could be held individually liable for harassment under section 12940. The plaintiff sued her employer, her supervisors, and a coworker for sexual harassment. (*Carrisales, supra,* 21 Cal.4th at p. 1134.) Former subdivision (h) (now subdivision (j)) made it unlawful for "an employer . . . or any other person" to harass an employee. As plaintiff does here, the plaintiff in *Carrisales* argued that the word "person" in the harassment provision clearly demonstrated the Legislature's intent to impose individual liability on employees who harass. (*Carrisales, supra,* 21 Cal.4th at p. 1135.)

We disagreed. While we acknowledged that the provision was susceptible of such an interpretation, we emphasized the need to read the language in light of the statute as a whole. (*Carrisales, supra,* 21 Cal.4th at p. 1135.) In deciding that the harassment provision did not impose individual liability, we specifically relied on the second sentence of former subdivision (h)(1), which provided that " '[h]arassment of an employee or applicant by an employee other than an agent or supervisor . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.' " (*Carrisales, supra,* 21 Cal.4th at p. 1136.) Pursuant to that language, an unlawful employment practice occurred only when the *employer* (or its agents or supervisors) failed to immediately take appropriate corrective action in response to actual or constructive notice of harassment. (*Id.,* at pp. 1135-1136.) We therefore reasoned the Legislature could only have intended for the employer to be held liable. (*Id.,* at p. 1136.) The plaintiff's alternative interpretation would have meant that an employee's individual **[42 Cal.4th 1186]** liability would turn on whether the employer took immediate and appropriate corrective action, an absurd result. (*Ibid.*)

After we decided *Carrisales*, the Legislature abrogated our holding. (See *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) As a result, the FEHA's harassment provision now provides that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (j)(3).) As we acknowledged in *McClung, supra,* 34 Cal.4th at page 471, in enacting subdivision (j)(3), the Legislature indisputably expressed its intent to impose individual

liability on employees who harass.

Defendants argue here that, taken together, *Carrisales* and the subsequent legislative response stand for the proposition that the word "person" in a subdivision of the statute does not support imposing individual liability, but rather that such liability is only imposed when the Legislature enacts language similar to that in section 12940, subdivision (j)(3). fn. 6 Defendants interpret *Carrisales* and the implication of the Legislature's response too broadly. Our decision in *Carrisales* specifically rested on the second sentence in former subdivision (h)(1) (now subdivision (j)(1)) -- that sentence informed our understanding of the word "person" in the first sentence of the harassment provision. (*Carrisales, supra,* 21 Cal.4th at pp. 1135-1136.) No such language appears in the retaliation provision. (See § 12940, subd. (h).) To the contrary, unlike the FEHA's harassment provision, subdivision (h) makes it clear that an unlawful employment practice occurs the moment a "person" retaliates against someone for opposing a forbidden practice. (*Ibid.*) Accordingly, as with *Reno, Carrisales* provides no support for the assertion that the Legislature did not intend for subdivision (h) to impose personal liability on individuals who retaliate.

B. *Interpretation of "Person" in the Retaliation Provision*

Having concluded that neither *Reno* nor *Carrisales* is dispositive of the issue presented here, I next consider whether the word "person" in section **[42 Cal.4th 1187]** 12940, subdivision (h) is susceptible of more than one *reasonable* interpretation such that we should resort to extrinsic sources to assist in determining the Legislature's intent. (*People v. Jefferson, supra,* 21 Cal.4th at p. 94.)

*1. Plain Language Interpretation*

Plaintiff urges the court to adopt a plain and commonsense interpretation of the retaliation provision. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) Plaintiff argues that, by making it unlawful for a "person" to retaliate (§ 12940, subd. (h)), the Legislature clearly expressed its intent to impose liability on any individual who retaliates. fn. 7 Such an interpretation has proved persuasive -- every published state and federal opinion to have considered this issue has, as the Court of Appeal did in this case, adopted the interpretation advanced by plaintiff. fn. 8 Indeed, the majority, conceding that the statutory language is susceptible of such an interpretation (maj. opn., *ante,* at p. 1162; see *Carrisales, supra,* 21 Cal.4th at p. 1135 [regarding nearly identical statutory language]), does not cite a single case reaching a contrary conclusion.

Plaintiff's argument has substantial merit, especially when one compares section 12940, subdivision (h) with the provisions we considered in *Reno* and *Carrisales*. Unlike the discrimination provision (subd. (a)) in *Reno,* which applies only to employers, the Legislature chose to include "person" as one of the entities in the retaliation provision whose conduct would trigger liability. fn. 9 Unlike the harassment provision in *Carrisales* (subd. (j)), which made harassment an unlawful employment practice only when an employer fails to take corrective action, the Legislature has made clear in subdivision (h) that an unlawful employment practice takes place when a "person" retaliates. In light of these linguistic differences between the retaliation provision on the one hand, and the discrimination and harassment provisions on the other, the **[42 Cal.4th 1188]** ordinary, everyday meaning of the statutory language appears to impose personal liability on any individual who retaliates. (See *Merrill v. Dept. of Motor Vehicles* (1969) 71 Cal.2d 907, 918.)

*2. "Incorporation" Interpretation*

Notwithstanding canons of statutory construction which counsel us to follow the traditional and plain meaning of a statute's words (*Mercer v. Dept. of Motor Vehicles* (1991) 53 Cal.3d 753, 763), the majority identifies, and ultimately adopts, a different interpretation -- that the Legislature's use of the word "person" in section 12940, subdivision (h) was intended to "incorporate" other provisions of the statute that are aimed at actions a "person" takes. fn. 10 (Maj. opn., *ante,* at p. 1164.) While the majority does not specify to which provisions of section 12940 it is referring, subdivisions (c) and (j) both apply to actions a "person" takes: subdivision (c) makes it unlawful "[f]or any person to discriminate . . . in the selection or training of [a] person in any apprenticeship training program . . . " and subdivision (j)(1) makes it unlawful for "an employer, labor organization, employment agency, . . . or any other person" to harass. (See also *id.,* subd. (i).)

Concluding that the word "person" was added to section 12940, subdivision (h) "to *incorporate* other unlawful employment practices defined in other parts of section 12940 . . . " (maj. opn., *ante,* at p. 1164, italics added), the majority fails to explain the implication of this "incorporation." In light of its ultimate conclusion that subdivision (h) does not impose individual liability, the majority could only have two possible implications in mind: either (1) the Legislature's addition of the word "person" to subdivision (h) provided certain victims of retaliation with a remedy that did not previously exist, because the word "person" appeared in other subdivisions (e.g., subd. (c)), but did not appear in the retaliation provision, or (2) the word

"person" was added to subdivision (h) for purely cosmetic reasons. Neither is plausible.

With regard to the first possible implication, before the Legislature added the word "person" to the retaliation provision (Stats. 1987, ch. 605, § 1, p. 1942), it was unlawful for "any employer, labor organization, or employment agency" to retaliate "against any person because the person has opposed **[42 Cal.4th 1189]** *any practices forbidden under this part* . . . ." (§ 12940, former subd. (f), italics added; Stats. 1985, ch. 1151, § 2, p. 3893.) One could claim that, prior to the addition of the word "person" to the retaliation provision, an individual who was discriminated against under subdivision (c) (apprenticeship training program), and was subsequently retaliated against for complaining, could not sue for retaliation. Any such claim is demonstrably false. Even if the list of entities at which the retaliation provision were aimed did not include the word "person," there could be no doubt that a person retaliated against for opposing a violation of subdivision (c) (a "practice[] forbidden under this part" [subd. (h)]) could sue the discriminator's employer for retaliation committed by the employer *or* by "any person acting as an agent of the employer" (§ 12926, subd. (d); see *Reno, supra*, 18 Cal.4th at p. 663). Therefore, it cannot be that the Legislature added the word "person" to subdivision (h) so that those retaliated against for opposing violations of subdivision (c) (or subdivision (j) [harassment]) would have a remedy.

The second possible implication, and the one the majority appears to have endorsed, is that the Legislature added the word "person" to section 12940, subdivision (h) for *no* reason at all, or for purely cosmetic purposes. Under this interpretation, both before and after the word "person" was added to subdivision (h), a person retaliated against for opposing *any* practice forbidden under section 12940 could sue. Additionally, according to the majority, both before and after the word was added, subdivision (h) imposed no personal liability on individuals who retaliate. The addition of the word "person" to subdivision (h), in the majority's estimation, appears to have worked no change at all. Such a conclusion is dubious, particularly because, as previously noted, it renders the word "person," and the amendment that added it, surplusage.

If these were the only two possible implications of this interpretation, I would conclude that the majority had not identified a reasonable alternative to a plain reading of the statutory language. But there is one other possible implication of this interpretation: the word "person" might have been added to subdivision (h) to point back to, or incorporate, other provisions aimed at actions a "person" takes, and in so doing, incorporated the level of liability existing in the underlying provision. This interpretation would impose personal liability on an individual who retaliated against a person who complained of an unlawful employment practice that itself provides for individual liability.

Subdivision (c) illustrates this point. In that provision, the Legislature has made it unlawful for a "person" (and *only a* "person") to discriminate in the selection or training of a person in any apprenticeship training program. (§ 12940, subd. (c).) It would be difficult to interpret subdivision (c) to allow **[42 Cal.4th 1190]** suit against anyone *other* than the offending "person" -- the subdivision does not identify anyone else the victim can sue other than the "person" who discriminated. If the offending "person" then retaliates against the victim for opposing the discrimination, the victim has suffered an independently actionable wrong and may now assert a retaliation claim under subdivision (h). As above, it would be difficult to say that subdivision (h) does not allow suit against that very same person for retaliating against the victim for opposing misconduct under subdivision (c). Accordingly, under the only reasonable implication of the majority's "incorporation" interpretation, subdivision (h) *does* impose individual liability, at least against a "person" who retaliates against someone who opposes a violation of subdivision (c).

This reasoning applies with equal force to retaliation against a person who opposed the retaliator's own harassment. As previously set forth, under subdivision (j)(1), it is unlawful for "an employer . . . or any other person" to harass an employee. In response to our decision in *Carrisales*, the Legislature enacted subdivision (j)(3), making clear that harassers are individually liable. As above with subdivision (c), if a supervisor may be held individually liable for harassment under subdivision (j), it logically follows that the word "person" in subdivision (h) permits suit against that very same supervisor for retaliating against an employee who opposes the supervisor's own harassment.

That is precisely what transpired here. Plaintiff alleged that Weiss harassed him on the basis of his sexual orientation and sexually harassed female employees as well. Plaintiff complained to Weiss, asking him to stop. After Weiss ignored plaintiff's entreaties, plaintiff complained to the human resources director and, ultimately, filed a charge with the DFEH. Plaintiff further alleged that, in response to his efforts to oppose *Weiss's* harassment of women and of plaintiff, *Weiss* then retaliated against him. fn. 11 No one disputes that, under subdivision (j)(3), Weiss can be held individually liable for his harassment. fn. 12 Accordingly, while an "incorporation" interpretation may be a reasonable alternative to a plain reading of the statutory language, the only plausible implication of such an interpretation is that **[42 Cal.4th 1191]** subdivision (h) imposes personal liability on Weiss for retaliating against plaintiff for opposing Weiss's own harassment. fn. 13

*3. Resorting to Extrinsic Sources to Resolve the Legislature's Intent*

The language of subdivision (h) is susceptible of two reasonable interpretations -- either that the word "person" imposes personal liability on *any* individual who retaliates or that it points back to other subdivisions aimed at actions a "person" takes, incorporating the level of liability available in those provisions. Both of these interpretations would result in personal liability under the facts of this case. To resolve which interpretation more likely comports with the Legislature's intent, I consider extrinsic sources.

I begin with the legislative history of the bill adding the word "person" to subdivision (h). As the majority explains, the word "person" was added to the retaliation provision in 1987, effective January 1, 1988 (Stats. 1987, ch. 605, § 1, p. 1942), with the enactment of Assembly Bill No. 1167 (1987-1988 Reg. Sess.). (Maj. opn., *ante*, at p. 1169.) The bill was introduced on March 3, 1987, by Assemblymember Bill Bradley on behalf of the DFEH and the Fair Employment and Housing Commission (FEHC), which were involved in drafting and developing the bill.

As the majority further recounts, almost none of the legislative history specifically addresses the addition of the word "person" to the retaliation provision. (Maj. opn., *ante*, at pp. 1169-1170.) However, the one piece of legislative history that *does* specifically address the addition of the word "person" to the retaliation provision strongly suggests that it was added to create personal liability for anyone that retaliates. The staff of the DFEH and the FEHC prepared a summary of the proposed changes to the FEHA, **[42 Cal.4th 1192]** including the addition of the word "person" to the retaliation provision. fn. 14 The summary describes the proposed changes to the retaliation provision, and then states: "Rationale: [¶] The addition of the word 'person' is to conform with other sections of the Act which refer to unlawful conduct by a 'person'. More importantly, the change will *extend coverage to anyone who retaliates* against an individual because that person filed a charge with DFEH. This will provide *more protection* to people exercising their lawful right to file with DFEH." (Italics added.)

The summary's statement that the addition of the word "person" to the retaliation provision would "*extend* coverage to *anyone* who retaliates" and "provide *more protection*" (italics added) clearly supports the plain language interpretation advanced by plaintiff, that any individual who retaliates may be held individually liable. fn. 15 The majority, by contrast, focuses on the first sentence of the summary's rationale for the proposed changes, that the word "person" was added to "conform" to other subdivisions of section 12940 that refer to unlawful conduct committed by a "person." (Maj. opn., *ante*, at pp. 1172-1173.) Even if the majority's emphasis was correctly placed, that portion of the document still supports an interpretation resulting in individual liability for Weiss -- that the word "person" was added to point back to uses of the word "person" in other subdivisions, thus incorporating the level of liability present in the underlying subdivision. What the summary's language does not support is the majority's claim that the word "person" was added for no reason at all.

Discussing other legislative history documents related to Assembly Bill No. 1167 (1987-1988 Reg. Sess.), the majority emphasizes that a number of documents, including the Legislative Counsel's Digest, describe the changes the bill made as "technical and conforming." (Maj. opn., *ante*, at pp. 1169-1171.) This general description of the bill's changes is less than enlightening. Moreover, as the majority concedes, none of the documents to which it refers specifically mentions the addition of the word "person" to the retaliation provision. (*Ibid.*) Additionally, the notion that the changes were "conforming," if anything, provides further support for the interpretation that the word "person" in the retaliation provision was intended to incorporate, or refer back to, other subdivisions aimed at unlawful conduct committed by a "person" -- an interpretation that, as explained above, results in individual liability under the facts of this case. **[42 Cal.4th 1193]**

In addition to the legislative history of Assembly Bill No. 1167 (1987-1988 Reg. Sess.), plaintiff also relies on the legislative history of Assembly Bill No. 1856 (1999-2000 Reg. Sess.), the bill abrogating our holding in *Carrisales*. An enrolled bill report prepared by the DFEH said that "[e]xisting law provides that when a person retaliates against another person for opposing practices forbidden by the FEHA . . . a complaint may be filed against any employer, labor organization, employment agency, or person." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.) Sept. 11, 2000, p. 3.) While the majority correctly notes that a statement made in 2000 about a statute enacted in 1987 is neither binding nor conclusive in construing that statute (maj. opn., *ante*, at pp. 1171-1172), we have previously acknowledged that "the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244.)

Moreover, the DFEH's enrolled bill report is particularly persuasive in light of section 12960, which sets forth the procedure for an aggrieved party to follow in filing a complaint regarding unlawful employment practices forbidden under section 12940. Section 12960, subdivision (b) provides that "[a]ny person claiming to be aggrieved by an alleged unlawful practice may file . . . a verified complaint, in writing, that shall state the name and address of *the person*, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of . . . ." fn. 16 (Italics added.) It would be odd for the Legislature to have provided that an alleged victim could file a complaint against a person, if the Legislature did not intend for the person to be held personally liable.

A more plausible theory is that the Legislature adopted language in section 12960 to permit a filing of a complaint against each of the entities that may be held liable for violations of section 12940: any employer, labor organization, employment agency, or *person*. That the language of section 12960 essentially tracks the language of the retaliation provision only bolsters the plain language reading of section 12940, subdivision (h). It is difficult to reconcile the language of section 12960, which was added to the Government Code in 1980 (Stats. 1980, ch. 992, § 4, p. 3155), with the majority's interpretation that section 12940 provides for no individual liability with the exception of the harassment provision, which was amended to add such liability in 2001. If the majority is correct, it is hard to comprehend why the Legislature would have allowed, long before it abrogated our decision in *Carrisales*, individuals to be named in complaints for violating section 12940 provisions. **[42 Cal.4th 1194]**

In light of the legislative history, the statutory context in which section 12940, subdivision (h) is placed, and well established canons of statutory interpretation that counsel us to adopt the plain and commonsense meaning of the words the Legislature has employed, I conclude that the Legislature intended the word "person" in subdivision (h) to mean that any individual who retaliates may be held personally liable. Even if this interpretation were incorrect, the only other plausible interpretation of the statutory language would similarly result in imposing personal liability under the facts of this case. What cannot be supported is the notion that the Legislature intended for no individual liability to be available under any circumstances. Accordingly, I dissent. Fortunately, the majority's adoption of an interpretation of the statute that has no support in its language or legislative history is not the final word on the meaning of the statute. The Legislature can, and should, clarify that meaning.

Kennard, J., and Werdegar, J., concurred.

FN 1. All further statutory references are to the Government Code unless otherwise indicated. Unlabeled references to subdivisions are to subdivisions of section 12940.

FN 2. The Assembly passed two bills amending section 12940 effective January 1, 2001. (Assem. Bill No. 1856 (1999-2000 Reg. Sess.) and Assem. Bill No. 2222 (1999-2000 Reg. Sess.).) By its own terms, Assembly Bill No. 2222 incorporated the changes imposed by Assembly Bill No. 1856. Among other changes, this legislation added new subdivisions (e) and (f) to section 12940 and redesignated former subdivisions (e) through (k) as subdivisions (g) through (m), respectively. (Stats. 2000, ch. 1049, §§ 7.5, 11.) Accordingly, current subdivision (h) was formerly subdivision (f), and current subdivision (j) was formerly subdivision (h).

FN 3. Later, in *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, we held that nonsupervising coworkers are not personally liable for harassment under the FEHA. After we decided *Carrisales*, the Legislature abrogated its holding in legislation which became effective January 1, 2001. (See *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) Section 12940, subdivision (j)(3), now provides: "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

FN 4. Justice Moreno's dissent argues, in part, that a supervisor who is liable for harassment should also be liable for retaliating against someone who opposes or reports that harassment. This case does not present that situation. Although plaintiff included a cause of action for harassment in his complaint, the trial court ruled, in a ruling long-since final and binding in this case, that there was no actionable harassment. Therefore, Weiss is *not* liable for harassment. Because the issue is not presented, we express no opinion on whether an individual who is personally liable for harassment might also be personally liable for retaliating against someone who opposes or reports that same harassment.

Justice Werdegar's dissent asserts that our conclusion "undermines the entire purpose of the FEHA." (Dis. opn. of Werdegar, J., *post*, at p. 1175.) Here, the jury awarded plaintiff a judgment of $1,395,000 against his employer, an award no longer at issue in this case. Because the FEHA targets unlawful *employment* practices (§ 12940), we suggest that imposing a substantial judgment against the employer rather than a nonemployer does not entirely undermine its purpose.

FN 5. The court in *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra*, 40 Cal.3d at page 10, footnote 3, denied judicial notice of the document in question. In this case, before oral argument, we granted both parties' requests to notice legislative history materials, including, over defendants' objection, plaintiff's request to notice the five-page document discussed in the text. We will generally grant requests to notice legislative history documents, meaning we will at least *consider* them, even if, as here, we ultimately find some to be of little or no help in ascertaining legislative intent. (Evid. Code, § 452, subd. (c); see *In re S.B.* (2004) 32 Cal.4th 1287, 1296, fn. 3.)

FN 6. Plaintiff also cites two committee reports regarding this same bill, which stated that some legal sources had believed individual liability for harassment had existed before our decision in *Carrisales v. Department of Corrections, supra,* 21 Cal.4th 1132. These statements hardly support the conclusion that any Legislature intended to impose personal liability for *retaliation.*

FN 1. All statutory references are to the Government Code.

FN 1. All further unlabeled statutory references are to the Government Code.

FN 2. The factual and procedural history is taken from the Court of Appeal's opinion.

FN 3. The Lodge is affiliated with Evans Hotel Corporation (Evans Hotels), which owns or is involved in the operation of a number of hotels, including the LTP.

FN 4. At the time of our decision in *Reno,* harassment was addressed in section 12940, former subdivision (h). Retaliation was addressed in former subdivision (f). Two Assembly bills amended the section effective January 1, 2001. (Assem. Bill No. 1856 (1999-2000 Reg. Sess.); Assem. Bill No. 2222 (1999-2000 Reg. Sess.).) The legislation added two new subdivisions and redesignated several former subdivisions. (Stats. 2000, ch. 1047, § 1; *id.,* ch. 1049, §§ 7.5, 11.) Accordingly, former subdivision (h) (prohibiting harassment) is now subdivision (j), and former subdivision (f) (prohibiting retaliation) is now subdivision (h).

FN 5. Indeed, the *Janken* court (whose reasoning formed a substantial basis of our decision in *Reno, supra,* 18 Cal.4th at pages 645-663, and on which the majority here again relies (maj. opn., *ante,* at pp. 1163-1167) found the linguistic difference between the FEHA's discrimination and harassment provisions to be of critical importance. (*Janken, supra,* 46 Cal.App.4th at p. 65.) Focusing on the Legislature's use of the words "any other person" in the harassment provision (now § 12940, subd. (j)(1)), *Janken* concluded that "the question of individual liability for harassment seems clearly answered in California." (*Janken, supra,* 46 Cal.App.4th at p. 67, fn. 19.) As previously noted, identical phrasing appears in the retaliation provision. (§ 12940, subd. (h).)

FN 6. Similarly, the majority points to section 12940, subdivision (j)(3) as an example of "clear language imposing personal liability on all employees . . . ." (Maj. opn., *ante,* at p. 1162.) While the Legislature did abrogate *Carrisales* in unmistakably clear language, this does not mean that anything short of subdivision (j)(3)'s language cannot express the Legislature's intent to impose such liability. When the Legislature provides, as it does in a great number of statutes, that it is unlawful for X to do Y, it typically means that, having done Y, X has violated the law and may be sued for doing so. The majority has identified no persuasive rationale to treat this statute any differently, let alone a rationale grounded in statutory language or the legislative history.

FN 7. The FEHA defines "person" as including "one or more individuals . . . ." (§ 12925, subd. (d).)

FN 8. (E.g., *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1236-1237; *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1240-1242; *Page v. Superior Court* (1995) 31 Cal.App.4th 1206; *Winarto v. Toshiba America Electronics Components* (9th Cir. 2001) 274 F.3d 1276, 1288; *Peterson v. Santa Clara Valley Medical Center* (N.D.Cal., Jan. 7, 2000, No. C 98-20367) 2000 WL 98262; *Soo v. United Parcel Service, Inc.* (N.D.Cal. 1999) 73 F.Supp.2d 1126; *Liberto-Blanck v. City of Arroyo Grande* (C.D.Cal. 1999) 33 F.Supp.2d 1241; *Kaminski v. Target Stores* (N.D.Cal., Sept. 4, 1998, No. C98-2271) 1998 WL 575097.)

FN 9. Indeed, in deciding that subdivision (h) does not impose liability on a "person" who retaliates, the majority treats the word "person" in a unique manner. There is no doubt that the other entities identified in subdivision (h) - an employer, labor organization, or employment agency - may be sued for their retaliatory conduct. Treating one of the identified entities in a manner different from the others is odd, absent a principled basis for doing so, since the language of the subdivision appears to similarly situate the listed entities.

FN 10. As discussed above (see *ante,* pp. 14-15), defendants argue the Legislature could also have added the word "person" to ensure that an employer would be liable for its supervisors' retaliatory actions. The majority does not address this theory and it is easily dismissed. The Legislature having already incorporated respondeat superior principles via the use of the word "employer" in section 12940, subdivision (h) (see *Reno, supra,* 18 Cal.4th at pp. 644-645; § 12926, subd. (d)), defendants would have us conclude the Legislature chose to do so *again* by adding the word "person" as well. This interpretation is not plausible.

FN 11. The jury obviously was persuaded that Weiss retaliated. It returned a verdict in plaintiff's favor on his retaliation claim against Weiss, awarding $155,000 in compensatory damages against Weiss.

FN 12. I acknowledge that the trial court granted Weiss's motion for summary judgment on plaintiff's harassment claim. However, contrary to the majority's assertion (maj. opn., *ante*, at p. 1168, fn. 4), this does not alter the analysis. It is well established that retaliation is an independently actionable claim that does not require that a plaintiff prevail on the underlying unlawful employment action so long as the plaintiff has a reasonable, good faith belief he or she was opposing an unlawful employment action. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043.) Given the facts recited by the Court of Appeal, one would be hard pressed to conclude plaintiff had no such good faith belief that Weiss was engaging in unlawful harassment. Indeed, notwithstanding its granting of the summary judgment motion, the trial court instructed the jury that they could find that Weiss retaliated against plaintiff because plaintiff opposed unlawful harassment.

FN 13. Although I believe that examining policy considerations is only warranted when the statutory language does not clearly resolve the issue (see *ante*, p. 1185), I do note that this "incorporation" interpretation would minimize many of the policy concerns focused on by the majority. (See maj. opn., *ante*, at pp. 1164-1168.) Under this interpretation, a supervisor could only be held individually liable for retaliation if he or she was motivated by an individual's opposition to that supervisor's harassment. As the majority notes, " ' "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." ' " (Maj. opn., *ante*, at p. 1164, quoting *Reno*, *supra*, 18 Cal.4th at pp. 645-646.)

FN 14. The summary was the first document in the legislative bill file of the Assembly Committee on Housing and Community Development, the policy committee to which Assembly Bill No. 1167 (1987-1988 Reg. Sess.) was referred.

FN 15. Because the FEHC and the DFEH sponsored, developed, and helped to draft Assembly Bill No. 1167 (1987-1988 Reg. Sess.), we should accord their interpretation of the legislation significant respect. (See *Reimel v. Alcoholic Beverage Control Appeals Bd.* (1967) 254 Cal.App.2d 340, 345.)

FN 16. Section 12960 was derived from Labor Code former section 1422. (Stats. 1959, ch. 121, § 1, p. 2003.)

Return to Top

Do Another California Case Law Search

**Citation Search**        Select        [ get it ]

**Party Name Search**                    [ search ]

**Full-Text Search**                     [ search ]

*Copyright © 1993-2008 AccessLaw*

AbacusLaw -
The most sophisticated law practice management software, made easy.
www.abacuslaw.com
Fast Funds -
Lawsuit Cash Advances No Interest or Fees Funding in 48 hrs 866-738-3817
www.FastFundsForYou.com
FindLaw Special Offers -
Sign up for free Business and Technology Offers
newsletters.findlaw.com/nl
Ads by FindLaw